**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

**TREND & STYLE ASIA HK CO. LTD.,**

**Plaintiff,**

**- against -**

**PACIFIC WORLDWIDE, INC., PACIFIC**
**INTERNATIONAL ALLIANCE, INC., LMT**
**GLOBAL LLC, MARTIN TERZIAN and**
**TONY GASSON,**

**Defendants.**

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/10/15

**OPINION AND ORDER**

**14-cv-9992 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.      INTRODUCTION

Trend & Style Asia HK Co., Ltd. ("T&S") brings this action seeking

damages from Pacific Worldwide, Inc. ("Worldwide"), Pacific International

Alliance, Inc. ("International"), LMT Global LLC ("LMT"),[1] Martin Terzian, and

Tony Gasson.[2]  T&S asserts causes of action for (1) breach of contract against the

Corporation Defendants and Terzian, (2) unjust enrichment against all defendants,

---

[1]      I will refer to Worldwide, International, and LMT together as the
"Corporation Defendants."

[2]      I will refer to Terzian and Gasson together as the "Individual
Defendants."

1

(3) account stated against the Corporation Defendants and Terzian, (4) fraud against all defendants, and (5) promissory estoppel against all defendants.  The Corporation Defendants answered and filed a counter-claim on April 13, 2015. Plaintiff answered the counter-claim on May 4, 2015.  The Individual Defendants now move to dismiss all claims against them under Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 9(b).  For the following reasons, that motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.   Facts[3]

T&S is a Hong Kong corporation that manufactures and exports handbags and accessories.[4]  The Corporation Defendants are Delaware corporations with offices in Manhattan that import manufactured goods for distribution to retail outlets nationwide.[5]  Martin Terzian is the owner, President, and Chief Executive Officer of the Corporation Defendants.[6]  Tony Gasson is the Chief Financial Officer of Worldwide and International.[7]

---

[3]     The facts below are drawn from the Amended Complaint ("Compl.").

[4]     *See* Compl. ¶ 11.

[5]     *See id.* ¶¶ 12–14.

[6]     *See id.* ¶ 15.

[7]     *See id.* ¶ 16.

From approximately 2009 through 2014, T&S and defendants engaged in a business relationship whereby the Corporation Defendants sent purchase orders for goods to T&S, and T&S shipped the ordered goods to the United States.[8]  During the period of 2009–2012, Worldwide and International sent a number of purchase orders to T&S, which T&S filled and invoiced.[9]  The Corporation Defendants never disputed the accuracy of any invoice accompanying the orders.[10]  As of the date of the Amended Complaint, Worldwide and International owed $3,032,464.36 on unpaid invoices from this period.[11]

In June 2013, Terence Leung, President of T&S, traveled to New York to discuss the outstanding balance with Terzian and Gasson.[12]  During or immediately following the meeting, Gasson and Terzian promised to pay the outstanding balance by the end of July 2013 and to pay all future invoices on receipt.[13]  In reliance on these promises, T&S continued to fill purchase orders from Worldwide and International, with certain invoices addressed to LMT as

---

[8]     *See id.* ¶¶ 17, 26, 32, 40, 44.

[9]     *See id.* ¶¶ 17–22.

[10]    *See id.* ¶ 23.

[11]    *See id.* ¶¶ 24–25.

[12]    *See id.* ¶ 27.

[13]    *See id.* ¶¶ 28–31.

consignee.[14]  Although none of the Corporation Defendants objected to any invoice during the period of 2012–2013, these invoices were only partially paid.[15]  As of the date of the Amended Complaint, $73,929.90 remained outstanding from this period.[16]

In March 2014, Terzian and Leung spoke on the telephone, and "Terzian promised to pay [the Corporation Defendants'] outstanding balance due and any future invoices immediately upon the Corporation Defendants' receipt of payment [from Corporation Defendants' retail customer] . . . ."[17]  Relying on this representation, T&S shipped an order of backpacks directly to International's retail customer (Target department stores) and invoiced International for the amount due.[18]  One or more of the Corporation Defendants received payment from Target in July 2014.  However, as of the date of the Amended Complaint, $212,898.30 remained outstanding.[19]

## B.    Procedural History

---

[14]    *See id.* ¶¶ 32–35.

[15]    *See id.* ¶¶ 37–39.

[16]    *See id.*

[17]    *Id.* ¶ 42.

[18]    *See id.* ¶¶ 40–47.

[19]    *See id.* ¶¶ 48–52.

T&S filed the Amended Complaint on March 23, 2015 seeking $3,319,292.56 plus interest and costs for the sum of all outstanding invoices due to T&S from 2009 through 2014 and the return of any unsold goods shipped to defendants, plus punitive damages.[20]  The Individual Defendants filed the instant motion on April 6, 2015.

## II.    LEGAL STANDARD

### A.    Pleading in the Alternative

In general, plaintiffs may plead in the alternative under Rule 8(a)(3). "Moreover, causes of action that are inconsistent are permitted so long as they are plead in separate counts."[21]  "Under our system of notice pleading and pleading in the alternative, a party should plead all theories that he wishes to pursue."[22]

While plaintiffs may plead alternative contract claims, "to the extent there is a valid and enforceable contract between plaintiff[s] and defendants, plaintiff[s] will not be able to seek recovery in quasi contract in addition to or in

---

[20]     *See id.* at 14 (Demand for Relief).

[21]     *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 14 Civ. 6228, 2015 WL 2354582, at *5 (S.D.N.Y. May 14, 2015); *see also Strobl v. New York Mercantile Exch.*, 768 F.2d 22, 30 (2d Cir. 1985) ("[T]he Federal Rules of Practice . . . provide that inconsistent causes of action may be stated alternatively or hypothetically.") (citing Rule 8(a)(3)).

[22]     *Peterson v. Insurance Co. of N. Am.*, 40 F.3d 26, 32 n.3 (2d Cir. 1994).

conflict with the express terms of that contract."[23]   However, if no contract exists

between the parties, plaintiffs may recover under an alternative quasi-contract

theory.[24]

### B.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

must "accept[] all factual allegations in the complaint as true and draw[] all

reasonable inferences in the plaintiff's favor."[25]   The court evaluates the

sufficiency of the complaint under the "two-pronged approach" set forth by the

Supreme Court in *Ashcroft v. Iqbal*.[26]   Under the first prong, a court may "begin by

identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth."[27]   For example, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

---

[23]   *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 39 (S.D.N.Y. 1991) (citing *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 72 (S.D.N.Y. 1988); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).

[24]   *See id.* (citing *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 504–05 (1983)).

[25]   *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

[26]   *See* 556 U.S. 662, 678–79 (2009).

[27]   *Id.* at 679.

suffice."[28]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[29]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[31]

### C.    Motion to Dismiss Under Rule 9(b)

The Supreme Court has recognized only limited exceptions to Rule 8(a)'s simplified pleading standards.  For example, Rule 9(b) "provides for greater particularity in all averments of fraud . . . ."[32]  Rule 9(b) also requires that, "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  While the Supreme Court has declined to specify what language is sufficient to constitute greater particularity, the Second Circuit requires "plaintiffs to plead the factual basis which gives rise to a strong

---

[28]    *Id.* at 678 (citation omitted).

[29]    *Id.* at 679.

[30]    *Id.* at 678 (citation omitted).

[31]    *Id.* (quotation marks omitted).

[32]    *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).

inference of fraudulent intent."[33]  Such an inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[34]  Fraud "may be pleaded without long or highly detailed particularity."[35]  However, "Rule 9(b) . . . does not require courts to credit a complaint's conclusory statements without reference to its factual context."[36]

### D.   Leave to Amend

Rule 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[37]  Although "[t]he Court should freely give leave

---

[33]   *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 Fed. App'x 679, 681 (2d Cir. 2012) (quotation marks omitted) (citing *O'Brien v. National Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

[34]   *Id.* (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).

[35]   *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 632 (5th Cir. 1999).

[36]   *Iqbal*, 556 U.S. at 665 (quotation marks omitted) (brackets omitted).

[37]   *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted) (citations omitted).

8

when justice so requires,"[38] it is "within the sound discretion of the district court to grant or deny leave to amend."[39]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[40]  Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[41]

## III.   APPLICABLE LAW

### A.   Piercing the Corporate Veil

In general, New York courts only rarely find individual liability in contract actions between corporations, as "there must be overwhelming evidence of the signatory's intention to assume personal liability."[42]  "This rule is supported by the rationale that in modern times most commercial business is done between

---

[38]     Fed. R. Civ. P. 15(a)(2).

[39]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[40]     *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[41]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[42]     *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002) (quotation marks omitted) (citing *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)).

corporations, not individual stockholders or officers of the corporation."[43]

Under New York law, a party seeking to pierce the corporate veil must show:  (1) "that the owner exercised complete domination over the corporation with respect to the transaction at issue" and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.[44]  The corporate veil may be pierced "either when there is fraud or when the corporation has been used as an alter ego."[45]  To determine whether the corporate veil should be pierced, courts consider: "(1) the absence of corporate formalities; (2) inadequate capitalization; (3) overlap in ownership, officers, directors, and employees; (4) common office space, address, and telephone numbers; (5) the amount of business discretion displayed by the allegedly dominated corporation; and (6) arms length business dealings between the related corporations."[46]

---

[43]    *Id.* (quotation marks omitted) (citing *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67 (1961)).

[44]    *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. New York State Dep't of Taxation and Fin.*, 82 N.Y.2d 135 (1993)).

[45]    *Itel Containers Int'l Corp. v. Atlanttrafik Express Servs. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990) (emphasis omitted).

[46]    *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 320 (S.D.N.Y. 2014) (citing *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765,  2002 WL 31050846, at *3 (S.D.N.Y. Sept. 12, 2002)).  *Accord Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 472 (S.D.N.Y.

Evidence of complete domination includes inadequate capitalization and a corporation's failure to observe such usual formalities as holding shareholder or director meetings.[47]

Primarily, a court is concerned with "reality and not form, and with how the corporation operated."[48]  Further, veil-piercing claims need not be pleaded with heightened particularity, except for those discrete cases specifically mentioned in the Rules (such as Rule 9).[49]

## B.   Contract Claims

### 1.   Breach of Contract

Under New York law, a breach of contract claim requires "(1) a valid contract; (2) plaintiff's performance; (3) defendant's failure to perform; and (4)

---

2006) (noting additional factors).

[47]     *See Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997).

[48]     *Wajilam Exports (Singapore) Pte Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (quotation marks omitted).  *Accord United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000) (noting that alter ego determination must be made based on totality of facts).

[49]     *See Apex Mar. Co. v. OHM Enters., Inc.*, No. 10 Civ. 8119, 2011 WL 1226377, at *2 (S.D.N.Y. Mar. 31, 2011) (citing *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003)).

damages resulting from the breach."[50]  A breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal."[51]  The plaintiff must plead facts showing that an enforceable contract existed, including facts surrounding the formation of the contract, such as the contract's date, major terms, names of the parties, and that the party to be bound actually assented to the contract.[52]  Additionally, the plaintiff must identify the specific provisions of the contract on which the plaintiff bases its claim.[53]  A claim for breach of contract cannot be sustained by a conclusory statement that the accused breached a contract.[54]

### 2.   Account Stated

To establish a claim for account stated, a plaintiff must plead that: "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor

---

[50]    *MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, Nos. 14 Civ. 7091, 14 Civ. 7973, 2015 WL 221055, at *3 (S.D.N.Y. Jan. 15, 2015) (citing *Diesel Props S.r.l. v. Grey Stone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

[51]    *Id.* (quotation marks omitted).

[52]    *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

[53]    *See Sheridan v. Trustees of Columbia Univ. in the City of N.Y.*, 745 N.Y.S.2d 18, 19 (1st Dep't 2002)*; see also Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995).

[54]    *See Berman*, 580 F. Supp. 2d at 202.

promised to pay the amount stated."[55]  The account stated is "based upon prior transactions between [the parties] with respect to the correctness of the account items and balance due."[56]  Recovery on a claim for account stated is permitted on the theory that "the parties have, by their conduct, evidenced an agreement upon the balance of an indebtedness."[57]

"Even though there may be no express promise to pay . . . from the very fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing."[58]  An account stated is implied when a creditor sends a statement of an account to a debtor, and the debtor — who has a duty to examine the statement to ascertain whether it is correct or not — keeps it for a reasonable time without objecting to the correctness of the account.[59] An implied account

---

[55]  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009).  *Accord Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185 (S.D.N.Y. 2009) ("Under New York law, an account stated refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due.") (citation omitted).

[56]  *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 216 (S.D.N.Y. 2007) (citing *Jim-Mar Corp. v. Aquatic Const., Ltd.*, 600 N.Y.S.2d 790, 790 (3d Dep't 1993) (citations omitted)).

[57]  *Manhattan Motorcars*, 244 F.R.D. at 216 (citing *Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc.*, 37 N.Y.2d 151, 153–54 (1975)).

[58]  *IMG Fragrance*, 679 F. Supp. 2d at 411–12 (citation omitted).

[59]  *See Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 615 F. Supp. 426, 429 (S.D.N.Y. 1985).

stated generally arises when "a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment."[60] An implied account stated

> may sometimes result from the retention of accounts current without objection. But the result does not always follow.  It varies with the circumstances that surround the submission of the statements and those circumstances include, of course, the relation between the parties.[61]

For "an objection to . . . an account stated to have any meaning, the term 'objection' must refer to 1) an objection of the debtor and must be 2) communicated to the entity owed."[62]  This principle "does not refer to a dispute between the debtor and third parties."[63]  "[W]here the question is whether the alleged debtor retained a statement of account without objecting within a

---

[60]   *IMG Fragrance*, 679 F. Supp. 2d at 411.

[61]   *Manhattan Motorcars*, 244 F.R.D. 216 (S.D.N.Y. 2007) (citing *Newburger-Morris Co. v. Talcott*, 219 N.Y. 505, 512 (1916)).

[62]   *FTI Consulting, Inc. v. Rossi*, No. 03 Civ. 4033, 2004 WL 359378, at *4 (S.D.N.Y. Feb. 25, 2004) (citation omitted).  *Accord Lankler Siffert & Wohl, LLP v. Rossi*, 287 F. Supp. 2d 398, 408 (S.D.N.Y. 2003) (granting summary judgment where plaintiff law firm claimed it had not received any objection to its bills and the alleged objections made by defendants were conclusory and unsubstantiated, and did not provide any detail as to the nature of the objections).

[63]   *FTI Consulting*, 2004 WL 359378, at *4.

reasonable time," the issue "almost always is for the jury."[64]  However, if the facts "give rise to only one reasonable inference in respect of whether there was assent to the statement of account, the issue is one of law."[65]

### 3.    Unjust Enrichment

Under New York law, a claim for unjust enrichment requires that "the defendant benefitted . . . at the plaintiff's expense [and] . . . that equity and good conscience require restitution."[66]  "An indispensable ingredient of such a claim is that as between the two parties involved there must be an injustice."[67]  The essence of a cause of action for unjust enrichment is that "one party possesses money . . . that in equity and good conscience . . . should not have [been] obtained or

---

[64]    *Genuity v. Nortel*, No. 02 Civ. 7883, 2002 WL 31802321, at *1 (S.D.N.Y. Dec. 13, 2002).  *Accord Epstein v. Turecamo*, 684 N.Y.S.2d 62, 622 (2d Dep't 1999) ("[W]hether a bill has been held without objection for a period of time sufficient to give rise to an inference of assent, in light of all the circumstances presented, is ordinarily a question of fact, and becomes a question of law only in those cases where only one inference is rationally possible.") (citation omitted).

[65]    *Genuity*, 2002 WL 31802321, at *1.

[66]    *Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 9227, 2009 WL 399728, at *7 (S.D.N.Y. Feb. 17, 2009), *report and recommendation adopted*, No. 07 Civ. 9227, 2009 WL 666435 (S.D.N.Y. Mar. 12, 2009).

[67]    *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984) ("The doctrine of unjust enrichment rests upon an equitable principle that a person should not be allowed to enrich himself at the expense of another.").

15

possessed because it rightfully belongs to another."[68]

### 4.    Promissory Estoppel

In New York, promissory estoppel requires "a clear and unambiguous promise, a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance."[69]

### C.    Fraud Claim

### 1.    Generally

In New York, the elements of a fraud claim are:  "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."[70]

### 2.    Overlapping Claims

---

[68]    *Rodriguez*, 2009 WL 399728, at *7 (citing *Strong v. Strong*, 715 N.Y.S.2d 499, 501 (3d Dep't 2000) (quotation marks omitted)).

[69]    *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (citations omitted).

[70]    *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). *Accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").

In New York, a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract.[71]  Such a fraud claim can only be brought alongside a breach of contract claim where the plaintiff distinguishes the two by (1) alleging a legal duty separate from the duty to perform under the contract; (2) alleging a fraudulent misrepresentation collateral or extraneous to the contract; or (3) seeking special damages caused by the misrepresentation that cannot be recovered as contract damages.[72]

## IV.   DISCUSSION

### A.   Pleading in the Alternative

The Individual Defendants argue that T&S's claims for unjust enrichment, account stated, and promissory estoppel are duplicative of the breach of contract claim.  However, the Rules expressly permit plaintiffs to plead in the alternative, and the law is well settled in this regard.[73]

In support of their argument, the Individual Defendants primarily rely on three cases.  *First*, they cite two district court cases — *Renaissance Search*

---

[71]     *See Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 551 (1992).

[72]     *See Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

[73]     *See* Fed. R. Civ. P. 8(a)(3); *see also Strobl*, 768 F.2d at 30.

17

*Partners v. Renaissance Ltd.*[74] and *Banker v. Esperanza Health Systems, Ltd.*[75] — that are not about pleading requirements at all.  The Magistrate Judge's Report and Recommendation in *Renaissance* was a damages report after default judgment.[76] The *Banker* opinion resulted from a Rule 56 summary judgment motion.[77]  In neither case did the courts apply the Rule 8 pleading standards; instead, the courts properly applied the standards governing each case's procedural posture.  Thus, neither case applies here.

Second, the Individual Defendants rely on *Corsello v. Verizon*[78] for the proposition that unjust enrichment cannot be used as a "catchall" in the event that other claims fail.[79]  While the Individual Defendants' general proposition is correct, the reasoning in *Corsello* does not apply here.  In *Corsello*, the plaintiffs

---

[74]     No. 12 Civ. 5638, 2014 U.S. Dist. LEXIS 91359, at *19 (S.D.N.Y. July 3, 2014), *report and recommendation adopted in part and rejected in part*, 2014 U.S. Dist. LEXIS 140932, at *1 (S.D.N.Y. July 3, 2014).

[75]     No 05 Civ. 4115, 2011 WL 867217, at *2 (S.D.N.Y. Mar. 10, 2011).

[76]     *See Renaissance Search Partners,* 2014 U.S. Dist. LEXIS 91359, at *1.

[77]     *See  Banker*, 2011 WL 867217, at *1.

[78]     *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

[79]     *See* Memorandum of Law of Defendants Martin Terzian and Tony Gasson in Support of Their Motion to Dismiss the Complaint as Against Them Pursuant to Federal Rules of Civil Procedure Rules [sic] 9(b) and 12(b)6 ("Def. Mem.") at 8.

alleged trespass, inverse condemnation, violation of New York General Business Law § 349,[80] and unjust enrichment.  Notably, they did not allege breach of contract or any other quasi-contract claims.  The Court of Appeals dismissed the unjust enrichment claim because the circumstances in *Corsello* did not "create an equitable obligation running from the defendant to the plaintiff."[81]  Here, on the other hand, T&S pleads in the alternative because even if it cannot prove the existence of express or implied contracts, it could still recover by proving liability under a quasi-contract theory, which would lie if the fact-finder concludes that there was a never a contract between the parties.  Should the fact-finder so conclude, this would be the "typical case" where the defendant "has received money to which he or she is not entitled."[82]

Nonetheless, if the Individual Defendants admit that there was a contract even while denying liability under it, then the Court will dismiss as duplicative the quasi-contract allegations as to Terzian.[83]  However, at this stage of the litigation, the existence of express oral contracts, implied contracts, or both is

---

[80]     This section governs unlawful deceptive acts and practices.

[81]     *Corsello*, 18 N.Y.3d at 791.

[82]     *Id.*

[83]     T&S does not allege breach of contract against Gasson.  *See* Compl. at 9 (First Claim for Relief).

still in dispute.[84]  Therefore, T&S can plead breach of contract, unjust enrichment,

account stated, and promissory estoppel in the alternative.

## B.    Piercing the Corporate Veil

The Amended Complaint alleges that Terzian "abused" the corporate

form by treating the Corporation Defendants as his "alter egos."[85]  The Amended

Complaint states that certain companies were inadequately capitalized, did not

observe usual corporate formalities, or both.[86]  Thus, a plain reading of the

allegations shows that they comply with Rule 8's "short and plain statement"

requirement.[87]

---

[84]    *See* Defendants Pacific Worldwide, Inc., Pacific International Alliance Inc, [and] LMT Global LLC Answer to Amended Complaint with Counterclaims and Set-Offs ¶¶ 70–75.

[85]    T&S alleges that (1) defendants treated the Corporation Defendants interchangeably; (2) in at least one instance Worldwide was inadequately capitalized and thus purchase orders were issued from International; (3) Terzian held the same positions at all three Corporation Defendants; (4) Gasson held the same positions at Worldwide and International; (5) Worldwide and International had the same principal place of business and all three Corporation Defendants had an office at the same Manhattan address; (6) Terzian disregarded the corporate form by transferring assets and liabilities among the Corporation Defendants and other companies with similar names; and (7) Terzian disregarded the corporate form by utilizing employees of one company in service of his other companies. *See id.* ¶¶ 12–16, 54–58, 61–62, 69–81.

[86]    *See Thrift Drug, Inc.*, 131 F.3d at 97.

[87]    *See, e.g.*, *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) ("The Amended Complaint alleges that DMA acted as the alter-ego, business

The Individual Defendants also argue that T&S's alter ego allegations fail because T&S was "at all times fully aware of the very indicia of control that it now asserts to be the bases of its alter ego claims against Terzian . . . ."[88]  The Individual Defendants cite to a laundry list of facts that T&S supposedly "knew," but many of these examples are based on a misreading of the Amended Complaint.[89]  For example, the Individual Defendants argue that "from the face of the Amended Complaint, Plaintiff, 'throughout the course of the business relationship between Plaintiff and Defendants,' knew that [Worldwide] and [International] were both owned by Terzian."[90]  But the Amended Complaint does not state that T&S knew that Terzian owned the Corporation Defendants throughout the parties' business relationship.  Instead, the Amended Complaint states that "[upon] information and belief, throughout the course of the business relationship between Plaintiff and Defendants, Defendant Terzian abused the

---

conduit and instrumentality of defendant Martin. . . .  As a result, defendants' motion to dismiss . . . is denied.") (quotation marks omitted) (citations omitted).

[88]     *See* Reply Memorandum of Law of Defendants Martin Terzian and Tony Gasson in Further Support of Their Motion to Dismiss the Complaint as Against Them Pursuant to Federal Rules of Civil Procedure Rules [sic] 9(b) and 12(b)(6) at 4.

[89]     *See id.* at 3–4.

[90]     *See id.* at 3 (citing Compl. ¶ 54).

privilege of doing business in the corporate form by treating [the Corporation Defendants] as his alter egos."[91]  T&S does not allege when it learned that Terzian was abusing the corporate form; perhaps it was many years into the parties' business relationship.  In any event, the merits of T&S's veil-piercing theory cannot be decided on a motion to dismiss because veil-piercing is a fact-laden inquiry.[92]

### C.  Claims One, Two, Three, and Five:  Contract and Quasi-Contract Claims

#### 1.  Claims Against Gasson

The claims against Gasson for promissory estoppel and unjust enrichment fail because T&S does not allege that Gasson was the alter ego of the Corporation Defendants such as to warrant a piercing of the corporate veil.  A fair reading of the Amended Complaint shows that Gasson made the promises or agreements (depending on the theory of liability) while conducting business with T&S executives.  Thus, accepting T&S's allegations as true, Gasson made the promises to or agreements with T&S in his executive, not individual, capacity.  Accordingly, the Individual Defendants' motion as to these claims is granted.

---

[91]   Compl. ¶ 54.

[92]   *See Damianos Realty Grp., LLC v. Fracchia*, 825 N.Y.S.2d 274, 276 (2006).

As permitted under Rule 15(a)(2), however, T&S is granted leave to amend Claims Two and Five of the Amended Complaint as to Gasson only if it can plead that Gasson was the alter ego of the Corporation Defendants, thereby warranting a piercing of the corporate veil.

### 2.     Claims Against Terzian

#### a.     Breach of Contract and Account Stated

In moving to dismiss these two claims, the Individual Defendants argue that Terzian disregarded the corporate form.  As discussed earlier, however, dismissal on the ground of failure to pierce the corporate veil is not warranted at this time.  Thus, the Individual Defendants' motion as to these claims is denied.

#### b.     Unjust Enrichment

T&S alleges that it shipped goods to the Corporation Defendants, who profited by selling those goods without paying T&S.  T&S further alleges that it would be against equity and good conscience to permit defendants to retain this profit without paying T&S.

The essence of an unjust enrichment claim is that "one party possesses money . . . [that] rightfully belongs to another."[93]  T&S has stated a plausible claim that Terzian abused the corporate form for his own benefit by profiting from the

---

[93]      *Rodriquez*, 2009 WL 399728, at *7 (quotation marks omitted) (citing *Strong*, 715 N.Y.S.2d at 501).

resale of goods manufactured by T&S and sold by the Corporation Defendants

(Terzian's alleged alter ego).  Because further fact discovery is necessary to

determine whether T&S can succeed in piercing the corporate veil, the Individual

Defendants' motion as to the unjust enrichment claim is denied.

### c.    Promissory Estoppel

T&S alleges several clear and unambiguous promises by Terzian,

including that "Terzian promised T&S that [the Corporation Defendants] would

pay a portion of the balance due on the invoices by the end of July 2013 and would

pay all future invoices immediately upon receipt."[94]  T&S also alleges that it

reasonably and foreseeably relied on the promises by continuing to fill purchase

orders by the Corporation Defendants even though invoices from previous years

had not been paid.  Lastly, T&S alleges injury based on its reliance.[95]  The

Complaint adequately alleges each element of this claim; accordingly, the

Individual Defendants' motion to dismiss the promissory estoppel claim as to

Terzian is denied.

### D.    Claim Four:  The Fraud Claim Against Terzian and Gasson

T&S has met the heightened pleading standard for fraud under Rule 9.

---

[94]    Compl. ¶ 109. *See also id.* ¶¶ 112–114.

[95]    *See* Compl. ¶¶ 102, 106.

The Complaint alleges facts that give rise to a strong inference of fraudulent intent.[96]  T&S alleges that the Individual Defendants made false promises to pay portions of the balance due on outstanding invoices with the knowledge that they could not or would not make the payment.[97]   T&S also alleges that the Individual Defendants intended to induce reliance — and that T&S did rely on their representations — in order to cause T&S to ship more bags and accessories.[98]  Finally, T&S has alleged an injury.  According to the Complaint, T&S sent additional goods to the United States — goods that it would not have sent absent fraud — for which T&S was never paid even though defendants made a profit from the sale of those goods.

Accordingly, it is reasonable to infer that the Individual Defendants had motive and opportunity to commit fraud by promising to immediately pay the amounts due on past or future invoices.  In so doing, the Individual Defendants induced T&S to ship additional goods that the Corporation Defendants would sell for a profit and withheld the truth that the Individual Defendants had no intention

---

[96]    *See Landesbank Baden-Wurttemberg*, 478 Fed. App'x at 681.

[97]    *See* Compl. ¶¶ 97–107.

[98]    *See id.*

of paying T&S.[99]  These allegations, if true, provide strong circumstantial evidence of conscious misbehavior or recklessness.[100]

The Individual Defendants are correct that a fraud claim cannot proceed when it is indistinguishable from a breach of contract claim.[101]  However, the Individual Defendants fail to distinguish this case from *Graubard, Mollen, Dannett, & Horowitz v. Moskovitz*, the controlling case from the New York Court of Appeals.[102]  In *Graubard*, the court upheld related contract and fraud claims because the fraud claim was based on an oral assertion going beyond the four corners of — and therefore collateral to — the contract.[103]  T&S makes a similar —

---

[99]     *See Sabo v. Delman*, 3 N.Y.2d 155 (1957); *see also Graubard, Mollen, Dannett, & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 122 (1995); *Deerfield Commc'ns Corp. v. Chesebrough–Ponds, Inc.*, 68 N.Y.2d 954 (1986); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403 (1958).

[100]     *See Landesbank Baden-Wurttemberg*, 478 Fed. App'x at 681.

[101]     *See* Def. Mem. at 9 (citing *Todd v. Grandoe Corp.*, 756 N.Y.S.2d 658, 661 (3d Dep't 2003)).

[102]     *See* 86 N.Y.2d 112, 115 (1995).  *Accord International Bus. Machines Corp. v. Bajorek*, 191 F.3d 1033, 1042 (9th Cir. 1999) (applying New York law) ("A false statement of intention is sufficient to support an action for fraud, even where that statement relates to an agreement between the parties.").

[103]     *See Graubard*, 86 N.Y.2d at 121–22 ("[W]hether the promised 'best efforts' [as articulated in the contract] were in fact used is a disputed issue that must be determined at trial. . . .  Plaintiff charges that Moskovitz represented orally to the partnership that he and the other [senior partners] would act to ensure the future of the firm by integrating and institutionalizing [his] clients when he never intended to do so and indeed was even considering the formation of a new

and therefore proper — claim here.[104]

Lastly, because corporate officers cannot hide behind the corporation in cases of fraud,[105] T&S's allegations state a valid claim for tort recovery against the Individual Defendants.  For these reasons, the Individual Defendants' motion to dismiss Claim Four is denied.

## V.   CONCLUSION

For the foregoing reasons, the Individual Defendants' motion is DENIED as to Claims One, Three, and Four; DENIED as to Claims Two and Five as to Terzian only; and GRANTED as to Claims Two and Five as to Gasson only, with leave to amend.  Any amended pleading must be filed by August 10, 2015.  A

---

partnership. . . . [A fraud] cause of action has been stated."). *Accord Gotham Boxing Inc. v. Finkel*, No. 601479-2007, 2008 WL 104155, at *10 (Sup. Ct. N.Y. Co. 2008) ("[T]he distinction [between a permissible and an impermissible fraud claim formed on the basis of a breach of contract claim] seems to turn on whether the complaint alleges a particular statement, omission, or other conduct by the defendant, in addition to the text or statements that form the basis of the alleged contract.  As *Graubard* shows, *it does not seem to matter that the alleged fraudulent representation is virtually identical to the promise contained in the contract as long as it is made at a different time and place*.") (emphasis added).

[104]   *See* Compl. ¶¶ 98–99, 103–104 ("Gasson and Terzian represented . . . that [the Corporation Defendants] would pay T&S a portion of their outstanding balance by the end of July 2013 and would pay all future invoices immediately upon receipt.  Gasson and Terzian made these representations with the knowledge they were false.").  These representations were made well after the alleged formation of the contracts.  *See id.* ¶¶ 17–43.

[105]   *See Itel Containers*, 909 F.2d at 703.

conference is scheduled for August 20, 2015 at 4:30pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 10, 2015

**-Appearances-**

**For Plaintiff and Counter-Defendant:**

Justin M. Sher, Esq.
Sher Tremonte LLP
80 Broad Street, Suite 1301
New York, NY 10004
(212) 202-2600
(212) 202-4156 (fax)
jsher@shertremonte.com

**For Individual Defendants Martin Terzian and Tony Gasson:**

Thomas M. Bloomer, Esq.
Law Offices of Thomas M. Bloomer
175 Main Street, Suite 507
White Plains, NY 10601
(914) 946-2341
tbloomer@bloomerbloomer.com

**For Corporation Defendants and Counter-Claimants Pacific Worldwide, Inc., Pacific International Alliance, Inc., and LMT Global LLC:**

Steven Craig Bagwin, Esq.
Ginsburg & Redmond, P.C.
245 Saw Mill River Road, Second Floor
Hawthorne, NY 10532
(914) 747-7070
(914) 747-9201 (fax)
sbagwin@grlawpc.com